**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| STEVEN CRESCENT,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:25-cv-312-AZ |

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Plaintiff Steven Crescent's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Plaintiff argues that the Administrative Law Judge ("ALJ") committed error by failing to adequately consider Plaintiff's alleged limitation in sitting when formulating Plaintiff's ability to work and generally for failing to adequately evaluate Plaintiff's subjective symptoms when ruling on his application for benefits. For the reasons discussed, the Court agrees that the ALJ erred when they did not specifically address Plaintiff's sitting limitation when arriving at Plaintiff's Residual Functional Capacity. Accordingly, the Court will reverse the ALJ's written decision and remand for further administrative proceedings.

[1] On November 24, 2025, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 15.

## Background

Plaintiff Steven Crescent filed an application for disability benefits on November 30, 2022. A.R. 11.[2] Plaintiff applied for benefits claiming a disability onset date of October 15, 2022. *Id.* at 11. His claims were denied in his initial application and upon reconsideration, and he requested a hearing before an ALJ. *Id.* On June 13, 2024, the ALJ held a telephonic hearing at which Plaintiff was represented by an attorney and a Vocational Expert ("VE") testified. *Id.* The ALJ kept the record open for several weeks so Plaintiff could submit additional medical evidence which was considered by the ALJ. *Id.* On August 28, 2024, the ALJ issued a written decision denying benefits. A.R. 11-20. Plaintiff timely appealed to the Appeals Counsel, and the Appeals Counsel denied Plaintiff's Request for Review. Plaintiff filed a complaint for District Court review. *See* DE 1. Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Plaintiff was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, although he had earned some money working as a part-time grocery delivery driver. A.R. 13-14. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease; bilateral knee osteoarthritis; diabetes; obesity; and bilateral carpal tunnel

---

[2] Citations to the Administrative Record, filed at DE 7, are throughout as "A.R."

syndrome. A.R. 14. The ALJ further noted several non-severe impairments including hypertension, hyperlipidemia, Vitamin D deficiency, basal cell skin cancer, and a recent diagnosis of cubital tunnel syndrome. *Id.* But because none of these caused more than minimal limitations, they were deemed non-severe and are not relevant to this appeal. *Id.*

The ALJ next considered whether Plaintiff's documented severe impairments met or equaled any of the applicable listings. The ALJ determined Plaintiff did not meet Listing 1.15 (Disorders of the Skeletal Spine resulting in compromise of a nerve root) or Listing 1.18 (Abnormality of a major joint(s) in any extremity) on account of either his degenerative disc disease or bilateral knee osteoarthritis . *Id.* at 14-15. The ALJ further considered and found that as a result of his carpal tunnel syndrome and diabetes, Plaintiff did not meet the requirements for Listing 11.14 (peripheral neuropathy) or Listing 9.00 (Endocrine Disorders). *Id.* at 15. Finally, the ALJ found that Plaintiff's impairments or the combination of them, including as combined with his documented obesity, did not meet or equal any applicable listing because he did not have a documented medical need that satisfied all of the requirements of any of these listings. *Id.*

Having found Plaintiff was not presumptively disabled based on any applicable listing, the ALJ moved on to assess his Residual Functional Capacity (RFC). The ALJ found he had the capacity:

> to perform sedentary work … except that [Plaintiff] can frequently balance and occasionally stop, kneel, crouch and crawl. [He] can occasionally climb ramps and stairs [but] never climb ladders, ropes and scaffolds. [Plaintiff] can perform frequent

> handling and finer with the bilateral upper extremities. [Plaintiff]] must avoid unprotected heights and slippery surfaces.

A.R. 15.

The ALJ then recounted the testimony and evidence from Plaintiff's medical history that supported or factored into the RFC. While the ALJ recognized that Plaintiff's "medically determinable impairments could reasonably be expected to cause alleged symptoms," his statements concerning "the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent" with the record and the evidence only "partially support[ed]" his allegations. A.R. 16.

To support this generic conclusion, the ALJ documented Plaintiff's ongoing care for his diabetes, arthritis, degenerative disc disease, and carpal tunnel syndrome starting in December 2022.[3] A.R. 16. Plaintiff was diagnosed with arthritis at an initial visit at Regional Health Systems in December 2022. *Id.* He was likewise obese at this time. In February 2023, he had an x-ray and MRI of his bilateral knees which indicated mild degenerative arthritis at the right knee joint. *Id.* at 17. Plaintiff complained of pain, and he received injections and a prescription for a knee brace. *Id.* He repeated his claims of pain at his May 2023 consultative exam and another x-ray revealed osteoarthritis in both knees, but it was "minimal" in the right knee. *Id.* And while thereafter many of Plaintiff's conditions improved, including surgery for his carpal tunnel, in March 2024, Plaintiff had edema in his knees which he said was

[3] The Court will not summarize all of the medical history, including much of it relating to diabetes and carpal tunnel, only that which relates to the impairments and limitations germane to this appeal, namely Plaintiff's arthritis and degenerative disc disease.

exacerbated by sitting and walking. *Id.* at 18. Plaintiff was prescribed compression stockings for the edema. *Id.*

The ALJ further reviewed the opinions of the state agency medical consultants who found Plaintiff capable of light work. A.R. 19. The ALJ found them not persuasive because in the ALJ's view they were "not supported or well explained by the narratives … and … not consistent with the overall medical record of evidence." *Id.* Thus, as discussed above, the ALJ assessed Plaintiff's RFC at the more restrictive sedentary work exertional level with some additional limitations. The ALJ likewise found another doctor's opinion not persuasive because it recommended that Plaintiff could "resume all activities as tolerated without further restrictions." *Id.*

As to Plaintiff's testimony at the hearing regarding his limitations, the ALJ found it to be not consistent with the evidence. Plaintiff testified that he could not sit for more than 15-20 minutes without experiencing pain and the need to elevate his legs for an extended period of time. A.R. 132, 139-140. In finding Plaintiff's testimony generally not credible, the ALJ's analysis focused on the fact Plaintiff lived alone in a house, did household chores, was able to drive regularly, and worked as a grocery delivery driver part time. A.R. 18. As for Plaintiff's knees, the ALJ noted that x-rays and MRIs showed degenerative changes but no surgical referrals. *Id.* at 19. The ALJ did not specifically address Plaintiff's testimony regarding his inability to sit for more than 15-20 minutes, including while driving, his need to elevate his legs as a result, or that he told his primary care provider that his knee pain and edema were exacerbated by sitting.

At step four, the ALJ found Plaintiff could return to some of his past relevant work, including as a telephone sales representative, given his RFC. A.R. 20. Accordingly, at step five, Plaintiff was found not to be disabled and the application for benefits was denied. *Id.*

**Discussion**

The Social Security Act authorizes judicial review of a final decision of the agency and states that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

An ALJ must articulate their analysis of the evidence in such a way to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)). While "[i]t is not enough to criticize the ALJ's decision about her functional capacity to work." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024), remand can be warranted where a Plaintiff "point[s] to

evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Id.*

On appeal, Plaintiff makes two intertwined arguments. First, he argues that the ALJ did not sufficiently address or account for the fact Plaintiff testified he had limitations on the amount of time he could sit for without pain when the ALJ formulated Plaintiff's RFC. Second, he argues that as a general matter, the ALJ did not sufficiently consider the necessary factors when evaluating Plaintiff's testimony of his own subjective symptoms as to his limitations. Both of these arguments go to the ALJ's assessment of Plaintiff's subjective testimony as to his own limitations and whether they were or were not supported by the record evidence and what weight the ALJ gave them. As discussed below, the Court will only address the argument that relates to Plaintiff's sitting limitation because the ALJ's error is sufficient to warrant remand on this issue.

As Plaintiff frames it, because the ALJ acknowledged Plaintiff's testimony regarding his inability to sit for extended periods of time because of his arthritis, the ALJ needed to either accept this testimony and include it in the RFC or explain why it was not included in more detail. The Commissioner does not contest the fact that Plaintiff testified that he could not sit for more than 20 minutes without experiencing pain. Nor does the Commissioner argue that the ALJ addressed this alleged limitation squarely in the written decision. Instead, the Commissioner makes a harmless-error type analysis and faults Plaintiff for failing to point to objective

medical evidence which supports this alleged limitation. Ultimately, the Commissioner's argument fails to overcome the error in the ALJ's analysis.

While it is true that Plaintiff, as claimant, bears the burden of establishing his disability, the ALJ likewise has a duty to consider all of the evidence in determining whether a Plaintiff has done so. As the relevant Social Security regulations state, "[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you." 20 C.F.R. §§ 404.1529(c)(1). Thus, when dealing with subjective statements from a Plaintiff, such as pain from prolonged sitting, "the absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016). Plaintiff's testimony regarding his limitations cannot be dismissed or disregarded simply because it is not directly supported by some objective medical evidence, such as a surgical referral. *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty."). Instead, "[a]n ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain." *Sayers v. Kijakazi*, 2022 WL 3134515, at *4 (N.D. Ind. Aug. 5, 2022) (quoting *Moor v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014)). Here, the ALJ found that Plaintiff's osteoarthritis could reasonably produce his pain from sitting, so the ALJ needed to consider this limitation (and either accept or reject in full or in

part) when formulating the RFC. The ALJ's reference to a lack of a surgical referral is insufficient because it is solely focused on the need for some sort of objective medical evidence to support the limitation.

Nor is it enough to merely acknowledge Plaintiff's symptoms or limitations (as the ALJ did here) without actually addressing them. *See, e.g.*, *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (reversing and remanding where ALJ failed to adequately address subject complaints of fatigue from daily activities in formulating RFC); *Rebecca A. v. Kijakazi*, 2022 WL 16856394, at *3 (N.D. Ill. Nov. 10, 2022) ("Merely acknowledging Plaintiff's fatigue without analysis is insufficient."); *Clark v. Saul*, 421 F. Supp. 3d 628, 634 (N.D. Ind. 2019) ("It's true that the ALJ noted Clark's ongoing fatigue. But he failed to analyze it with regards to her ability to function both physically and mentally."). Courts have reversed ALJ written decisions in similar circumstances. For example, in *George T. v. Kijakazi*, 2023 WL 4248617, at *3 (N.D. Ind. June 29, 2023), the Court reversed where a plaintiff testified to a sitting limitation which was reasonably caused by his conditions, which the ALJ acknowledge but did not directly address when formulating the RFC. *Id.* ("[T]he evidence establishes that Plaintiff had conditions which could reasonably cause limitations in sitting, standing and walking, as the ALJ failed to properly evaluate the symptom allegations and the combined effect of Plaintiff's impairments, remand is required on this issue."). Plaintiff cites this case in support of his appeal and the Commissioner offers no particular response or reason why the case is distinguishable. That's because there appears to be none.

The ALJ's summary of Plaintiff's medical care mentions his ongoing right knee issues and related pain from sitting. In a March 2024 visit with his primary care provider, the last visit before Plaintiff's hearing in June, he "reported edema in his bilateral knees, which was exacerbated by sitting and walking. Physical examination revealed 1+ putting edema. …" A.R. at 18 (citations omitted). While this may not qualify as "objective" medical evidence, it is certainly relevant evidence about Plaintiff's limitations. And it does not undercut Plaintiff's testimony or provide a basis to find Plaintiff's testimony not entirely credible. Instead, this evidence tends to support Plaintiff's testimony, further eroding confidence that the ALJ fully considered Plaintiff's sitting limitation. But despite mentioning this medical evidence and acknowledging Plaintiff's testimony which was consistent with it, the ALJ failed to address the issue in any meaningful way when formulating the RFC. That was error.

Nor is the error harmless. In the context of Social Security disability benefits cases, an ALJ's error is only harmless if "it is predictable with great confidence that the agency will reinstate its decision on remand." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The ALJ found the opinions of the state agency medical consultants to be not persuasive because they opined that Plaintiff could perform light work (subject to a few other limitations). As the ALJ noted, these opinions were "not supported or well explained" and were "not consistent with the overall medical record evidence." A.R. 19. The ALJ then adopted a more restrictive RFC, one which limited Plaintiff to sedentary work (subject to a few other limitations) specifically because of

Plaintiff's "lumbar degenerative disc disease, bilateral knee osteoarthritis with an antalgic gait, and obesity." *Id.* But the ALJ still did not address or account for Plaintiff's sitting restriction despite the fact this Plaintiff had testified that this same bilateral knee osteoarthritis was the reason why he testified he could not sit for more than 20 minutes (and thus not perform sedentary work). Sitting for approximately 6 hours in an 8-hour workday is one of the key components of sedentary work. *See* 20 C.F.R. § 404.1567(a). Thus, given the ALJ's decision to discount the state agency medical consultant's opinions and find Plaintiff had greater limitations than they suggested, it is difficult to be confident the result on remand will be the same. An inclusion of a limitation on sitting, if warranted, would likely severely limit Plaintiff's ability to work.

As a reviewer of the ALJ's work, the Court needs to be assured the ALJ considered all of the evidence when arriving at their decision. Here, the Court cannot do that and so remand is warranted because it is "unclear if, or to what extent" the ALJ considered Plaintiff's sitting limitation when formulating the RFC. *Allen v. Astrue*, 2008 WL 6600481, at *12 (N.D. Ill. Nov. 13, 2008). That is not to say that on remand the ALJ must incorporate any particular additional sitting-based limitation into Plaintiff's RFC. None may be warranted. *See Schaaf v. Astrue* , 602 F.3d 869, 875 (7th Cir. 2010) ("[S]ubjective complaints are the opposite of objective medical evidence, and, while relevant, do not compel the ALJ to accept [the claimant's] assessment"). But if none is warranted, Plaintiff is entitled to be told why based on the full record of evidence, including his testimony that is not the case. In other words,

if the ALJ did not believe Plaintiff's testimony as to his inability to sit for more than 15-20 minutes before experiencing pain, the ALJ needed to explain why. The Court cannot simply assume that occurred.

**Conclusion**

For the reasons discussed, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Steven Crescent.

SO ORDERED this 10th day of September 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT